**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LATRISSA WEDDLE, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>SMITH & NEPHEW, INC, a Delaware corporation, )<br>SMITH & NEPHEW RICHARDS, INC., a )<br>Delaware corporation, DEPUY SYNTHES SALES, )<br>INC., a Massachusetts corporation, HOWMEDICA )<br>OSTEONICS CORP. a New Jersey corporation )<br>d/b/a STRYKER CORPORATION, a Michigan )<br>Corporation, and UNKNOWN MANUFACTURER )<br>)<br>    Defendants, ) | Case No. 2014-CV-09549<br><br>The Honorable John J. Tharp, Jr. |

## AMENDED COMPLAINT

NOW COMES Plaintiff LATRISSA WEDDLE, by and through her attorneys Barney & Karamanis LLP, and complaining against Defendants SMITH & NEPHEW, INC., a Delaware corporation, SMITH & NEPHEW RICHARDS, INC., a Delaware corporation, DEPUY SYNTHES SALES, INC., a Massachusetts corporation, HOWMEDICA OSTEONICS CORP., a New Jersey corporation, d/b/a STRYKER CORPORATION, a Michigan corporation, and UNKNOWN MANUFACTURER, states as follows:

## NATURE OF THE ACTION

1.  Latrissa Weddle was injured from use of the Smith & Nephew TRIGEN Hindfoot Fusion Nail system designed, developed, tested, licensed, manufactured, labeled, marketed, and sold by Smith & Nephew, Inc. and/or Smith & Nephew Richards, Inc.

**PARTIES**

2. Plaintiff Latrissa Weddle is a citizen of the State of Illinois, and domiciled in Cook County, Illinois.

3. Defendants Smith & Nephew, Inc., and Smith & Nephew Richards, Inc. (collectively referred to herein as "Smith & Nephew") are and were Delaware corporations. Smith & Nephew does business and maintains a registered agent in Chicago, Cook County, Illinois.

4. The Smith & Nephew Defendants maintain a principal place of business in Memphis, Tennessee.

5. Defendant DePuy Synthes Sales, Inc. ("DePuy") is a Massachusetts corporation. DePuy does business and maintains a registered agent in Chicago, Cook County, Illinois.

6. Defendant DePuy maintains a principal place of business in West Chester, Pennsylvania.

7. Defendant Howmedica Osteonics Corp. d/b/a Stryker Corporation (collectively referred to as "Howmedica") is a New Jersey corporation. Howmedica operates as a subsidiary of Stryker Corporation. Howmedica does business and maintains a registered agent in Chicago, Cook County, Illinois.

8. Defendant Howmedica maintains its principal place of business in Mahwah, New Jersey.

9. Stryker Corporation maintains its principal place of business in Kalamazoo, Michigan.

**JURISDICTION**

10. Jurisdiction is this case arises out of 28 U.S.C. §1332, based on diversity of citizenship between the Plaintiff and Defendants, and the amount in controversy exceeding $75,000.00.

**FACTS COMMON TO ALL COUNTS**

11. Defendant Smith & Nephew manufactured, designed, and distributed the TRIGEN Hindfoot Fusion Nail ("The Product"), which was implanted into Plaintiff. Defendants marketed the Product to the medical community and to Plaintiff as a safe, effective, and reliable medical device and surgical tool; implanted by safe and effective, surgical techniques for the treatment of medical conditions such as right tibial plafond nonunion.

12. The TRIGEN Hindfoot Fusion Nail is indicated for degeneration, deformity, trauma of both the tibiotalar and talocalcaneal articulations in the hindfoot; tibiocalcaneal arthrodesis; combined arthrodesis of the ankle and subtalar joints; avascular necrosis of the ankle and subtalar joints; and severe pilon fractures with trauma to the subtalar joints.

13. In October 2012, Plaintiff sustained a right pilon fracture.

14. Following the fracture in October 2012, Plaintiff underwent a right open reduction internal fixation tibial plafond, right open reduction internal fixation fibula, and removal of external fixator of the right ankle.

15. On or about March 25, 2013, Plaintiff's physicians notified her that the distal tibial and fibular facture fixation had failed. The medial tibial plate fractured at the level of the third screw from the top.

16. Consequently, on or about May 3, 2013, Plaintiff underwent removal of the October 2012 hardware in her right ankle, percutaneous fixation of the right tibial plafond, percutaneous fixation of the right fibula, and irrigation and debridement of the right ankle 20 x 10 cm excisional skin and subcantaneous tissue bone.

17. That on or about May 28, 2013, and at all times relevant herein, Dr. Bethany Gallagher, M.D., was a physician duly licensed to practice medicine in all of its branches in the State of Tennessee, and was engaged in the practice of her profession at Vanderbilt University Medical Center.

18. That on or about May 28, 2013, Plaintiff Latrissa Weddle sought treatment from Dr. Bethany Gallagher, M.D., at Vanderbilt University Medical Center for her tibial plafond fracture and fibula.

19. That on or about May 28, 2013, Dr. Gallagher performed surgery on the Plaintiff including a right tibiotalar arthrodesis, right subtalararthrodesis, and a femoral neck allograft with tibial autograft.

20. That on or about May 28, 2013, Dr. Gallagher inserted the TRIGEN Hindfoot Fusion Nail, and various other screws and pins (collectively referred to herein as "Components") manufactured, developed, and sold by Defendants DePuy and Howmedica into the right foot and ankle of Plaintiff.

21. That subsequent to the May 28, 2013, surgery, the Plaintiff did receive follow-up care and treatment from Dr. Gallagher; and further, Dr. Gallagher did provide a continuous course of treatment for Plaintiff.

4

22. That on or about October 21, 2013, Plaintiff had x-rays taken at Vanderbilt University Medical Center which indicated that the subtalar and tibiotalar fusion nail and screws were intact and fully engaged, and there were no new abnormalities.

23. That on or about November 29, 2013, in Chicago, the Plaintiff heard a loud popping noise while she was walking that emanated from her right ankle and foot.

24. That on or about November 30, 2013, Plaintiff experienced immense pain and discomfort from her right ankle, and presented to an Emergency Room in Chicago.

25. That on or about December 2, 2013, Plaintiff underwent x-rays and a CT Scan at Vanderbilt University Medical Center. The x-rays suggested possible fracture of the arthrodesis nail.

26. That on or about December 5, 2013, the CT Scan indicated the intramedullary nail used for fixation in Plaintiff's right ankle was partially broken. The tibiotalar arthrodesis nail was cracked distally at the lateral margin of the most cephalad of the distal interlocking screw holes.

27. That on or about December 13, 2013, Dr. Block at the Vanderbilt University Medical Center confirmed that the TRIGEN Hindfoot Fusion Nail and/or a Component of the Product inserted into Plaintiff had fractured and failed.

28. To date, as a result of the defect and failure of Defendants' Product and/or Components, Plaintiff has undergone further surgeries, suffers from limited range of motion and residual pain and discomfort in her right foot, ankle, and leg.

## COUNT I

### (Negligence against All Defendants)

1-28. Plaintiff repeats and realleges Paragraphs 1 through 28 of this Complaint as and for Paragraphs 1 through 28 of this Count I as if fully set forth herein.

29. At all times relevant, Defendants had a duty to exercise reasonable and ordinary care in designing, testing, manufacturing, distributing, marketing, promotion, and selling of the TRIGEN Hindfoot Fusion Nail and Components, such that it would be reasonably safe for its intended use.

30. Smith & Nephew and Defendants' negligence in the designing, testing, manufacturing, distributing, marketing, promoting, and selling of the TRIGEN Hindfoot Fusion Nail and/or Components included:

    a. TRIGEN Hindfoot Fusion Nail and/or Components were negligently designed and manufactured including creating increased metal corrosion;

    b. Defendants committed manufacturing errors, including but not limited to size tolerances out of specification and not within the industry acceptable standards;

    c. Smith & Nephews and Defendants' surgical protocol which, among other things, should provide a surgeon who possesses the requisite degree surgical skill and the information necessary for propose use of the device. Even after a proper review of all TRIGEN Hindfoot Fusion Nail surgical technique literature, other Smith & Nephew literature, and receiving proper training during residency programs, a surgeon of standard

competence and experience still lacks the requisite information necessary for safe and effective use of the TRIGEN Hindfoot Fusion Nail;

d. Smith & Nephew and Defendants, in advertising, marketing, promoting, packaging, and selling the TRIGEN Hindfoot Fusion Nail and/or Components, negligently misrepresented material facts regarding the Components' and/or Product's safety, efficacy, and fitness for human use by claiming the Product and/or Components were fit for its intended purpose when, in fact, they were not;

e. Smith & Nephew and Defendants, in advertising, marketing, promoting, packaging, and selling the TRIGEN Hindfoot Fusion Nail and/or Components, negligently misrepresented material facts regarding the Product's and/or Components' safety, efficacy, and fitness for human use by claiming the Product and/or Components had been adequately and reliably tested when, in fact, they were not;

f. Smith & Nephew and Defendants, in advertising, marketing, promoting, packaging, and selling the TRIGEN Hindfoot Fusion Nail and/or Components, negligently misrepresented material facts regarding the Product's and/or Component's safety, efficacy, and fitness for human use by claiming the Product and/or Components were safe and effective and were appropriate for use by human beings, when, in fact, they were not;

g. Smith & Nephew and Defendants, in advertising, marketing, promoting, packaging, and selling the TRIGEN Hindfoot Fusion Nail and/or Components, negligently misrepresented material facts regarding the

        Product's and/or Component's safety, efficacy, and fitness for human use by claiming the risk of serious adverse events and/or effects from the Product and/or Components were comparable to that of other ankle arthrodesis nails when in fact they were not;

h. Smith & Nephew and Defendants, in advertising, marketing, promoting, packaging, and selling the TRIGEN Hindfoot Fusion Nail and/or Components, negligently misrepresented material facts regarding the Product's and Component's safety, efficacy, and fitness for human use by claiming Product and/or Components had not caused or contributed to serious adverse events and/or effects requiring the premature removal of the Product and/or Components when, in fact, they had; and

i. Defendants negligently designed, manufactured, constructed, assembled, inspected and sold the Product and/or Components that were unreasonably dangerous and unsafe for its intended use, and had a propensity to fail;

31. Defendants knew or had reason to know that Plaintiff, as a member of the general public for whose use the Product and Components were placed into interstate commerce, would be likely to use the Product and Components in a manner described in this Complaint.

32. Defendants knew or reasonably should have known of the danger associated with the manner and circumstances of Plaintiff's foreseeable use of the Product and Components, which danger would not be obvious to the general public.

33. Defendants breached its duty of care to Plaintiff in the manufacture, design, labeling, warnings, instructions, sale, marketing, and distribution of the Product and Components.

34. As a direct and proximate result of one or more of the foregoing wrongful acts of omissions by Defendants, Plaintiff has sustained severe and permanent injuries, including pain, suffering, loss of care, comfort, and consortium, and economic damages.

WHEREFORE, Plaintiff by and through her attorneys, Barney & Karamanis, LLP, respectfully prays for judgment against Defendants in an amount in excess of $75,000.00, together with the costs of suit, and for any such further or other relief for Plaintiff that this Court deems just and equitable.

## COUNT II

(**Strict Product Liability against All Defendants**)

1-34. Plaintiff repeats and realleges Paragraphs 1 through 34 of this Complaint as and for Paragraphs 1 through 34 of this Count II as if fully set forth herein.

35. Defendants including Smith & Nephew had a duty to place into the stream of commerce, manufacture, distribute, market, promote, and sell the Product and/or Components that were not defective and unreasonably dangerous when put to the use for which they were designed, manufactured, distributed, marketed, and sold.

36. Defendants did in fact sell, distribute, supply, and/or promote the Product and/or Components to Plaintiff and her implanting physician.

37. Defendants expected the Product and/or Components they were selling, distributing, supplying, manufacturing, and/or promoting to reach, and they did in fact, reach, implanting physicians and consumers including Plaintiff and her physician, without substantial change in their condition.

38. At the time the Product and Components left the possession of Defendants and the Product and Components entered the stream of commerce, the Product and/or Components were

9

in an unreasonably dangerous and defective condition. These defects include but are not limited to the following:

    a. The Product and/or Components were not reasonably safe as intended to be used;

    b. The Product and/or Components had an inadequate design for their use as an ankle arthrodesis nail;

    c. The Product and/or Components contained unreasonably dangerous design defects, including an inherently unstable and defective design, which resulted in an unreasonably high probability of early failure;

    d. The Product's and/or Components' unstable and defective design resulted in a ankle arthrodesis nail which had risks which exceeded the benefits of the medical device;

    e. The Product's and/or Components' unstable and defective design resulted in a ankle arthrodesis nail which was more dangerous than the ordinary consumer would expect;

    f. The Product and/or Components failed to perform in a manner reasonably expected in light of its nature and intended function, and subjected the Plaintiff to an unreasonable risk of harm beyond that contemplated by an ordinary person;

    g. The Product and/or Components were insufficiently tested; and

    h. The warning to Plaintiff and Plaintiff's implanting physicians about the dangers of the Product and/or Components posed to consumers including

Plaintiff were inadequate. The inadequacy of Defendants' warnings include, but are not limited to, the following:

i. Insufficient to alert Plaintiff and Plaintiff's physicians as to the risk of adverse events and/or reactions associated with the Product and/or Components subjecting Plaintiff to risks which exceeded the benefits of the Product and/or Components;

ii. Contained misleading warnings emphasizing the efficacy of the Product and/or Components while downplaying the risks associated with it, thereby making use of the Product and/or Components more dangerous than the ordinary consumer would expect;

iii. Contained insufficient and/or incorrect warnings to alert consumers including Plaintiff, through their prescribing physicians regarding the risk, scope, duration, and severity of the adverse reactions associated with the Product and/or Components;

iv. Did not disclose that it was inadequately tested;

v. Failed to convey adequate post-marketing warnings regarding the risk, severity, scope, and/or duration of the dangers posed by the Product and/or Components; and

vi. Failed to contain instructions sufficient to alert consumers to the dangers they posed, and to give them the information necessary to avoid or mitigate those dangers.

39. Plaintiff used the Product and Components for their intended purpose.

40. Plaintiff and the implanting physician could not have discovered any defect in the Product and Components through the exercise of due care.

41. Defendants as designer, manufacturer, marketer, and distributor of medical devices are held to the level of knowledge as an expert in their field.

42. Plaintiff and the implanting physician did not have substantially the same knowledge as the Defendants.

43. As a direct and proximate result of one or more of the foregoing wrongful acts of omissions by Defendants, Plaintiff has sustained severe and permanent injuries, including pain, suffering, loss of care, comfort, and consortium, and economic damages.

WHEREFORE, Plaintiff by and through her attorneys, Barney & Karamanis, LLP, respectfully prays for judgment against Defendants in an amount in excess of $75,000.00, together with the costs of suit, and for any such further or other relief for Plaintiff that this Court deems just and equitable.

## COUNT III

**(Breach of Express Warranty against all Defendants)**

1-43. Plaintiff repeats and realleges Paragraphs 1 through 43 of this Complaint as and for Paragraphs 1 through 43 of this Count III as if fully set forth herein.

44. Defendants manufactured, distributed, advertised, promoted, and sold the Product and/or Components.

45. Defendants intended that that the Product and Components be used in the manner that Plaintiff in fact used it and expressly warranted that the product was safe and fit for use by consumers, that it was of merchantable quality, that its side effects were minimal and comparable to other ankle arthrodesis nails, and that it was adequately tested and fit for its intended use.

46. At the time Defendants made these express warranties, they knew or should have known that the Product and/or Components did not conform to the express warranties because the Product and/or Components were unreasonably dangerous and defective and had numerous serious side effects, many of which Defendants did not accurately warn about.

47. Plaintiff and/or her health care provider chose the Product and Components based upon Defendants' warranties and representations regarding the safety and fitness of the Product and Components.

48. Plaintiff individually, and/or by and through her physicians, reasonably relied upon Defendants' express warranties that the Product and Components were safe, merchantable, and fit for their intended use.

49. Defendants breached these express warranties because the Product and/or Components implanted in Plaintiff were unreasonably dangerous and defective, contrary to Defendants' representations and warranties.

50. As a direct and proximate result of one or more of the foregoing wrongful acts of omissions by Defendants, Plaintiff has sustained severe and permanent injuries, including pain, suffering, loss of care, comfort, and consortium, and economic damages.

WHEREFORE, Plaintiff by and through her attorneys, Barney & Karamanis, LLP, respectfully prays for judgment against Defendants in an amount in excess of $75,000.00, together with the costs of suit, and for any such further or other relief for Plaintiff that this Court deems just and equitable.

## COUNT IV

**(Breach of Implied Warranty against All Defendants)**

1-50. Plaintiff repeats and realleges Paragraphs 1 through 50 of this Complaint as and for Paragraphs 1 through 50 of this Count IV as if fully set forth herein.

51. Defendants manufactured, distributed, advertised, promoted, and sold the Product and/or Components.

52. Defendants intended that the Product and Components be used for the purposes and manner that Plaintiff or her implanting physician in fact used them and impliedly warranted that the Product and Components were of a merchantable quality, safe, and fit for such use, and adequately tested.

53. Plaintiff and her physician were foreseeable users of Defendants' Product and Components.

54. Plaintiff, individually, and/or through her physician, relied upon Defendants' implied warranty of merchantability and fitness for a particular purpose when she consented to have the Product and Components implanted in her.

55. Defendants breached the implied warranty, because the Product and/or Components were neither merchantable nor suited for its intended purpose.

56. Defendants breached their implied warranties because the Product and/or Components implanted in Plaintiff were unreasonably dangerous and defective, contrary to Defendants' representations and warranties.

57. As a direct and proximate result of one or more of the foregoing wrongful acts of omissions by Defendants, Plaintiff has sustained severe and permanent injuries, including pain, suffering, loss of care, comfort, and consortium, and economic damages.

WHEREFORE, Plaintiff by and through her attorneys, Barney & Karamanis, LLP, respectfully prays for judgment against Defendants in an amount in excess of $75,000.00, together with the costs of suit, and for any such further or other relief for Plaintiff that this Court deems just and equitable.

**LATRISSA WEDDLE**

By: /s/ James A. Karamanis
One of her Attorneys

James A. Karamanis
Shane M. Bradwell
Barney & Karamanis, LLP
Two Prudential Plaza
180 N. Stetson, Suite 3050
Chicago, Illinois 60601
Tel.: 312/553-5300
Attorney No. 48525