# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LATRISSA WEDDLE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 14 C 09549 |
| SMITH & NEPHEW, INC., DEPUY SYNTHES SALES, INC., and HOWMEDICA OSTEONICS CORP. | ) Judge John J. Tharp, Jr. ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Latrissa Weddle, fractured her ankle. Treatment ultimately included the insertion of a device manufactured by defendant Smith & Nephew, Inc. ("Smith"), the "Trigen Hindfoot Fusion Nail" system ("Trigen") to stabilize the joint. Other products—nails and cement manufactured by defendant Howmedica Osteonics Corp. ("Howmedica") and screws made by defendant DePuy Synthes Sales, Inc. ("DePuy")—were also used to implant the Trigen system. About six months later, one or more components that had been implanted in Weddle's ankle failed, causing substantial pain and necessitating a series of further surgeries. She filed this lawsuit against all three defendants asserting claims of negligence, strict products liability, and breach of express and implied warranties against each of the defendants. The defendants moved to dismiss the complaint on the ground that Weddle's complaint does not identify the specific components that failed and alleges only the possibility that any defective component was manufactured by one of the defendants. The Court agrees and grants the defendants' motions to dismiss without prejudice.

# BACKGROUND[1]

In October 2012, Weddle suffered a pilon fracture of her right ankle.[2] Sec. Am. Compl. ("SAC") ¶ 14, ECF No. 23. Weddle underwent surgery for the fracture in October 2012, a "right open reduction internal fixation tibial plafond, right open reduction internal fixation fibula, and removal of external fixator of the right ankle." SAC ¶ 15. On March 25, 2013, Weddle's physician informed her that the distal tibial and fibular fracture fixation had failed: the medial tibial plate fractured at the third screw from the top. SAC ¶ 16. On May 3, 2013, Weddle had the hardware in her right ankle removed and underwent additional ankle procedures. SAC ¶ 17. Later that month, on May 28, 2013, Weddle had another ankle surgery, performed by Dr. Bethany Gallagher at Vanderbilt University Medical Center. SAC ¶ 19. Dr. Gallagher performed "a right tibiotalar arthrodesis, right subtalararthrodesis, and a femoral neck allograft with tibial autograft." SAC ¶ 20. As part of this procedure, Dr. Gallagher inserted the Trigen system, which is manufactured, designed, and distributed by defendant Smith. SAC ¶¶ 12, 21. Dr. Gallagher also inserted additional screws and pins manufactured, developed, and sold by defendants Howmedica and DePuy. The Howmedica components included "three PIN STEIN SMTH TRCR PT 5/64 IN (Model No. 3811-1-090), two PIN STEIN SMTH TRCR PT 3/32 IN (Model No. 3811-2-090), and one SIMPLEX PW TOBRAMYCIN 6197-9-001 (Model No. 6197-9-001)," and the DePuy components included "two SCREW SCHANZ SLF DRILL 5.0 200 (Model No.

---

[1] As this is a motion to dismiss, the Court accepts all well-pleaded facts as true and construes all inferences in favor of the plaintiff. *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 634 (7th Cir. 2012).

[2] The ankle joint comprises three bones: the tibia (shin bone), the fibula (the smaller of the two leg bones below the knee), and the talus (a small bone in the foot that acts as a hinge between the tibia and fibula). A pilon fracture occurs at the bottom of the tibia and is often accompanied, as it was in this case, with a fracture of the fibula. *See generally* Brett D. Crist, MD, *Pilon Fractures of the Ankle*, American Academy of Orthopaedic Surgeons (Nov. 2015), http://orthoinfo.aaos.org/topic.cfm?topic=A00527.

294.786)." SAC ¶¶ 22-23. Though the complaint offers little explanation, as the Court understands it, the Trigen system is implanted to stabilize the bones affected by the pilon fracture and the pins and screws manufactured by Howmedica and DePuy were used to help fix the Trigen system in place (they are not, themselves, part of the Trigen system).

At a doctor visit on October 21, 2013, Weddle had x-rays which showed no abnormalities in the implant in her ankle. SAC ¶ 25. On November 29, 2013, however, Weddle heard a loud popping noise emanating from her right ankle while she was walking. SAC ¶ 26. The following day, Weddle went to the emergency room due to immense pain in her right ankle. SAC ¶ 27. On December 2, 2013, Weddle underwent x-rays and a CT scan, which suggested a possible fracture of the arthrodesis nail. SAC ¶ 28. On December 5, 2013, a CT scan indicated that the "intramedullary nail used for fixation" in Weddle's right ankle was partially broken and that the "tibiotalar arthrodesis nail was cracked distally at the lateral margin of the most cephalad of the distal interlocking screw." SAC ¶ 29. On December 13, 2013, Dr. Block at Vanderbilt University confirmed "that there was a 'fracture of the rod hardware,' i.e. the TRIGEN Hindfoot Fusion Nail and/or a Howmedica Component and/or a DePuy Component." SAC ¶ 30. Since December 2013, Weddle has undergone further surgeries and has suffered from a limited range of motion and residual pain in her right foot, ankle, and leg. SAC ¶ 31.

Weddle alleges that defendants Smith, Howmedica, and DePuy negligently designed and manufactured their respective products and negligently misrepresented material facts about their products' safety, that the defendants are strictly liable for defectively designing or manufacturing their products and for inadequately warning about their products' dangerousness, and that the

defendants breached express warranties and implied warranties of merchantability and fitness. Each defendant has moved to dismiss the complaint.[3]

## DISCUSSION

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Adams*, 742 F.3d at 728 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although notice pleading under Rule 8 is a more lenient standard than the code pleading that preceded it, "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. A court must accept all of the plaintiff's factual allegations as true when reviewing the complaint, but conclusory allegations merely restating the elements of a cause of action do not receive this presumption: "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679; *see also Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions"). "A complaint must allege facts to support a cause of action's basic elements; the plaintiff is required to do at least that much." *Adams*, 742 F.3d at 728; *see also id*.

---

[3] *See* Mts. Dismiss, ECF Nos. 25, 28, 43. The operative complaint is the Second Amended Complaint. The Court dismissed the initial complaint for lack of subject matter jurisdiction. *See* ECF Nos. 1, 5. Weddle filed an Amended Complaint on December 22, 2014, and Howmedica moved to dismiss for failure to state a claim. ECF Nos. 6, 8. In response, Weddle filed the Second Amended Complaint on March 31, 2015, which mooted Howmedica's original motion to dismiss. *See* ECF No. 24.

at 729 ("*Twombly* and *Iqbal* obviously require more than mere notice. When ruling on a motion to dismiss, the court must review the complaint to determine whether it contains 'enough fact to raise a reasonable expectation that discovery will reveal evidence' to support liability for the wrongdoing alleged.").

The defendants argue that Weddle has failed to plead adequately any of her claims because she has not identified which defendant's product failed and, thus, which defendant caused her injuries. *See* Howmedica Mem. in Supp. 5-6, ECF No. 26, Smith Mem. in Supp. 3-6, ECF No. 29, DePuy Mem. in Supp. 2, ECF No. 44. Effectively conceding that she does not know which device in her ankle failed, Weddle alleges that the "fracture of the rod hardware" in her ankle refers to either "the TRIGEN Hindfoot Fusion Nail **and/or** a Howmedica Component **and/or** a DePuy Component." SAC ¶ 30 (emphasis added). So stated, Weddle alleges only the possibility that Smith's device fractured, or that Howmedica's pin fractured, or that DePuy's screw fractured. As *Twombly* and *Iqbal* instruct, however, a plaintiff must do more than allege possibilities; she must allege facts sufficient to make her claim plausible. "The plausibility standard is not akin to a 'probability requirement,' but it asks for *more than a sheer possibility* that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 556) (emphasis added). Weddle's allegation that "fractured rod hardware" means that Smith and/or Howmedica and/or DePuy manufactured a defective product is merely a statement of the possible scenarios; it does not state a plausible claim against any of the three manufacturers.

To be sure, Weddle has alleged adequately that *someone*'s product failed, but that is not sufficient to state a claim against any of these defendants. As the Supreme Court made clear in rejecting allegations of vicarious liability of supervisory personnel in *Iqbal,* the allegations against any particular defendant must plausibly allege liability based on that defendant's own

conduct. 556 U.S. at 676 (to state a *Bivens* claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). The Seventh Circuit emphasized the same point in *Bank of Am., N.A. v. Knight*, 725 F.3d 815 (7th Cir. 2013), in holding that:

> Liability is personal. An allegation that *someone* looted a corporation does not propound a plausible contention that *a particular person* did anything wrong. The Rules of Civil Procedure set up a system of notice pleading. Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed.

*Id*. at 818 (emphasis in original).

The complaint in this case fails for the same reason: it fails to propound a plausible contention that a particular defendant's product failed. The plaintiff's assertion that she has put the defendants "on notice of the product at issue," Resp. to Smith 5, ECF No. 47, is simply wrong. On the basis of the complaint's allegations, it is equally impossible to discern whether all, some, or none of the defendants' products failed. Weddle states that an x-ray and a CT scan "suggested" that "the tibiotalar arthrodesis nail" and "the intramedullary nail" fractured, but the complaint fails to identify the manufacturer(s) of these devices (*i.e.,* there is no allegation that these particular nails were made by one or more of these defendants). Identifying the manufacturer(s) of these nails might suffice to allow a claim to go forward against the manufacturer(s), but it is not enough to say that the claim can go forward against all of the defendants because at least one of them must be liable.[4]

---

[4] There are a number of theories of tort liability in which a plaintiff is not required to prove which of multiple defendants caused her injury, but none would permit this claim to go forward. For example, the theory of alternative liability, first introduced in *Summers v Tice*, 199 P.2d 1 (Cal. 1948), shifts the burden of proof of causation onto the defendants after the plaintiff has shown that both defendants were negligent but is unable to establish which defendant caused her injury. *Id*. at 4-5. In *Summers*, two hunters negligently shot in the direction of the plaintiff,

6

This is not, it should be noted, a case of inconsistent, or alternative, pleading. The federal rules permit alternative, or even inconsistent, "statements of a claim"—*see* Fed. R. Civ. P. 8(d)(2) & (3)—but here, Weddle has not attempted to plead alternative "claims" (not to be confused with legal theories—*i.e.*, negligence, strict liability, and breach of express or implied warranty—which she is not required to plead at this stage, *see Alioto v. Town of* Lisbon, 651

---

but the plaintiff was unable to discern which hunter's bullet caused his injury. *Id*. The court concluded, if "defendants are independent tort feasors and thus each liable for the damage caused by him alone, and, at least, where the matter of apportionment is incapable of proof, the innocent wronged party should not be deprived of his right to redress." *Id*. at 5. Before shifting the burden of proof from the plaintiff in an alternative liability scenario, however, the plaintiff must establish that the defendants have all committed tortious conduct and that she is unable to determine which actor's conduct caused her harm. Here, Weddle has not established that each of the three defendants acted tortiously. Moreover, this theory is grounded in the policy determination that "defendants are in a far better position to offer evidence to determine which one caused the injury." *Id*. at 4. That is not the case here, where neither Smith, Howmedica, nor DePuy have any information regarding which specific component fractured. That information, if recorded anywhere, would likely be in Weddle's medical records or would be known to the doctors who performed her surgeries in and after December 2013. In short, Weddle is better able to determine the cause of her injury than are the defendants, so the case for *Summers v. Tice* burden shifting would be weak, even if there were a basis to conclude that all of the defendants had acted tortiously.

For the same reasons, the case for burden shifting available under the market share or risk-contribution theories utilized in DES and lead paint products liability cases is also lacking. As with alternative liability, the market share and risk-contribution theories require the plaintiff to establish breach of a duty of care before shifting the burden of proof as to causation to the defendants. *See, e.g.*, *Thomas v. Mallett,* 701 N.W.2d 523, 564 (Wisc. 2005) ("Once [the plaintiff] makes a prima facie case [of negligence or strict products liability], the burden of proof shifts to each defendant to prove by a preponderance of the evidence that it did not produce or market white lead carbonate . . . ."); *Sindell v. Abbott Laboratories,* 607 P.2d 924, 937 (Cal. 1980) (once the plaintiff joins manufacturers of a substantial share of the DES produced and marketed in the relevant area and proves a prima facie case on every element except the identity of the specific tort feasor, the burden of proof shifts to the defendants to prove that they did not cause the plaintiff's injuries); *see also Gibson v. Am. Cyanamid Co.*, 760 F.3d 600, 627 (7th Cir. 2014) *cert. denied*, 135 S. Ct. 2311 (2015) (affirming the constitutionality of applying the risk-contribution theory of liability to lead pigment claims). In the DES and lead paint cases, the plaintiff still must establish a prima facie case of negligence and/or strict liability and that it is impossible to tell which of a multitude of manufacturers caused her harm. Here, Weddle has not established a prima facie case of breach of a duty of care by any of the three defendants nor has she established that it is impossible to identify which of the three defendants manufactured the fractured nail(s).

7

F.3d 715, 721 (7th Cir. 2011)).[5] In naming the three defendants and alleging that each might be the party responsible for her injuries, Weddle is not asserting alternative "claims," but rather seeks to hold three different defendants liable for the same injuries without providing any basis to conclude that any one of them (much less *all* of them) are, in fact, responsible—other than that their products were among the products used to treat her fracture.

In any event, that a party may assert inconsistent claims or defenses does not license disregard of the requisite pleading standards. Inconsistency does not doom a claim, but implausibility does. *See, e.g.*, *Dorley v. S. Fayette Twp. Sch. Dist.*, No. 2:15-CV-00214, 2015 WL 5197030, at *11 (W.D. Pa. Sept. 4, 2015) (inconsistent allegations "must still have a plausible basis grounded in fact"); *Driver v. All. Oncology, LLC*, No. 15-CV-5008-SW-DGK, 2015 WL 4254392, at *3 (W.D. Mo. July 14, 2015) ("an alternative claim is still subject to dismissal if it fails to state a cause of action"); *Pittman v. State Farm Fire & Cas. Ins. Co.*, No. 2:14-CV-959-MHT-PWG, 2015 WL 7766711, at *7 (M.D. Ala. Apr. 13, 2015) *report and recommendation adopted,* No. 2:14CV959-MHT, 2015 WL 8770094 (M.D. Ala. Dec. 14, 2015) ("While pleading in the alternative is permissible (Fed. R. Civ. P. 8(d)(2)), the stated alternatives are precisely the type of conclusory allegations that cannot satisfy the pleading standard of Rule 8."); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 468-69 (S.D.N.Y. 2014) ("the ability to plead in the alternative does not obviate the need for each of plaintiffs' motive allegations to be 'plausible on its face.'"); *Milo & Gabby, LLC v. Amazon.com, Inc.*, 12 F. Supp. 3d 1341, 1354 (W.D. Wash. 2014) ("pursuit of alternate relief does not relieve plaintiffs of their obligation to plead sufficient factual allegations in support of that request"); *CAO Grp.,*

---

[5] A "'claim' (short for 'claim for relief') is an entitlement to a legal remedy for injuries arising from a single set of operative facts." *Mannes v. Ford Motor Co., Inc.*, No. 13 C 07381, 2014 WL 7332616, at *2 (N.D. Ill. Dec. 22, 2014) (citing *Black's Law Dictionary* (9th ed. 2009)).

*Inc. v. Sybron Dental Specialties, Inc.*, No. 2:12-CV-1062 DN-DBP, 2014 WL 119134, at *3 (D. Utah Jan. 10, 2014) ("While pleading in the alternative under Rule 8(d)(2) is well-recognized and accepted, pleading alternative causes of action does not relieve CAO if [sic] its obligation to include sufficient factual matter in its complaint in order to comply with the pleading requirements of Rule 8(a)(2) and the 'plausibility' standard set forth in *Iqbal* and *Twombly*."); *TechnoMarine SA v. Jacob Time, Inc.,* No. 12 Civ. 0790(KBF), 2012 WL 2497276, at *2 (S.D.N.Y. June 22, 2012) ("While a plaintiff may assert claims in the alternative, doing so does not relieve it of its burden to raise a reasonable expectation that discovery will reveal evidence of illegality for each claim asserted." (internal quotation marks omitted)).

This is not a case, moreover, where the plaintiff might excuse her failure to plead sufficient facts to set forth a plausible claim because the information necessary to do so lies within the exclusive province of the defendant. *See, e.g.*, *Bausch v. Stryker Corp.*, 630 F.3d 546, 560-61 (7th Cir. 2010) (no requirement to identify the precise design or manufacturing defect in a product, which would likely require discovery). Here, Weddle has all of the information relevant to the condition of her ankle and of the allegedly defective product implanted in her ankle; at this point, Weddle has exclusive and complete access to her physicians and medical records, including records that report on the condition of the products used to stabilize her pilon fracture. SAC ¶¶ 28-29. Indeed, Weddle even has the serial numbers of the specific Howmedica pins and DePuy screws that were implanted in her ankle. SAC ¶¶ 21-23. The defendants, by contrast, have no means to assess the condition of Weddle's ankle and no amount of discovery from the defendants will reveal which of the three defendants' components that were implanted in Weddle's ankle actually broke. The Seventh Circuit recently reiterated that "plaintiffs'

9

'pleading burden should be commensurate with the amount of information available to them.'" *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 528 (7th Cir. 2015) (quoting *Bausch*, 630 F.3d at 561). Weddle, the plaintiff, has exclusive access to the relevant information as to which component fractured and there is nothing unfair about requiring her to identify the responsible party in her pleading. What would be unfair, and contrary to notice pleading, would be to permit the plaintiff to pursue her claim against three defendants without alleging any facts that plausibly suggest that any of those defendants actually manufactured the device(s) that failed.

The inadequacy of the plaintiff's pleading is particularly acute in the case of DePuy. Taking the facts Weddle has pleaded as true—that what failed were "nails" or "rods"—DePuy argues that it could not be the liable party because it manufactured screws, not nails or rods. As the complaint is presently pleaded, that logic is compelling. Weddle appears to have pleaded facts that dictate dismissal of its claim against DePuy. *See Atkins v. City of Chicago,* 631 F.3d 823, 832 (7th Cir. 2011) (a party may plead herself out of court by pleading facts that show she has no legal claim).

Without the identification of which defendants' product or products actually failed, Weddle has failed to state a claim against any of the defendants: she has not identified a breach by any of the defendant manufacturers of their duty to design a reasonably safe product. *See Calles v. Scripto–Tokai Corp.,* 864 N.E.2d 249, 263 (Ill. 2007) (a products liability claim based on negligence must establish "the existence of a duty of care owed by the defendant, a breach of that duty, an injury that was proximately caused by that breach, and damages."); *id*. at 264 (a

manufacturer has a nondelegable duty to design reasonably safe products). Nor has Weddle established which product contained a defect as required for a claim of strict products liability. *See Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329, 335 (Ill. 2008) ("to recover in a strict product liability action, a plaintiff must plead and prove that the injury complained of resulted from a condition of the product, that the condition was unreasonably dangerous, and that it existed at the time the product left the manufacturer's control"). Weddle also failed to identify an express warranty any defendant made about a particular product or that any defendant breached such a warranty. *See Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 865 N.E.2d 334, 340 (Ill. App. Ct. 2007) ("In a breach of express warranty action [in Illinois], plaintiff must show a breach of an affirmation of fact or promise that was made a part of the basis of the bargain."). To state a claim for breach of implied warranty of merchantability or fitness, Weddle needed to, and again failed to, state the particular product that was allegedly not merchantable or fit for sale. *See Tillman v. Taro Pharm. Indus. Ltd.*, No. 10-CV-04202, 2011 WL 3704762, at *8 (N.D. Ill. Aug. 17, 2011) ("To prove an implied warranty of merchantability in Illinois, a plaintiff must prove that: (1) [the product was] not merchantable at the time of sale; (2) plaintiff suffered damages as a result of the defective [product]; and (3) plaintiff gave [defendant] notice of the defect." (internal quotation marks omitted, brackets in original)); *id.* ("An implied warranty of fitness arises when a seller knows of the particular purpose for which goods are required and the buyer relies on the seller's skill or judgment in selecting the goods." (internal quotation marks omitted)).

The remainder of the allegations concerning the claims of negligence, strict products liability, breach of express warranty, and breach of implied warranty are devoid of factual assertions and merely recite the legal elements of the claims and assert legal conclusions. *See, e.g.*, SAC ¶¶ 41 (alleged defects include "not reasonably safe," "inherently unstable and defective design," "risks exceeded the defects"); 48 (defendants "expressly warranted that the product was safe and fit for use by consumers, that it was of merchantable quality, that its side effects were minimal and comparable to other ankle arthrodesis nails, and that it was adequately tested and fit for its intended use"); 59 ("Defendants breached their implied warranties because the Product implanted in Plaintiff was unreasonably dangerous and defective, contrary to Defendants' representations and warranties."). These pleadings "are no more than conclusions," and, thus, "are not entitled to the assumption of truth" given to factual assertions at the motion to dismiss stage. *Iqbal*, 556 U.S. at 679.

\*   \*   \*

Weddle has failed to state facts that could plausibly lead to any of the defendants' liability on any of the counts she alleges; the Second Amended Complaint is, therefore, dismissed without prejudice. While it is true, as the defendants note, that Weddle has already amended her complaint once in response to a prior motion to dismiss, she has not had the opportunity to amend her complaint in response to a ruling by the Court as to the deficiencies in the complaint; in most cases, plaintiffs should have that opportunity. *See Runnion*, 786 F.3d at 519 ("[A] plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed."); *Alioto v. Town of Lisbon,* 651 F.3d 715, 721 (7th Cir. 2011) ("[A] motion to dismiss under Rule 12(b)(6) is not a responsive pleading and so, if an answer has not been filed,

a plaintiff ordinarily retains the ability to amend his complaint once as a matter of right, even after a court grants a motion to dismiss."). Thus, to the extent that Weddle can attempt, in good faith, to cure the deficiencies in the Second Amended Complaint, she may file a Third Amended Complaint within 28 days of this order. In the absence of a timely filed Third Amended Complaint, the case will be dismissed with prejudice.

Dated: April 11, 2016

John J. Tharp, Jr.
United States District Judge